Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff
and all those similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK SALAIZ, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>EHEALTHINSURANCE SERVICES, INC., a Delaware corporation, JOHN DOE, an unknown business entity,<br><br>                Defendants. | Case No.: 5:22-cv-04835-BLF<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ..................................................................................................1

II. FACTS & PROCEDURAL HISTORY ................................................................1

III. LEGAL STANDARD............................................................................................2

IV. LEGAL ARGUMENT...........................................................................................3

    A. E-HEALTH MAY BE HELD DIRECTLY LIABLE............................................4

    B. E-HEALTH MAY BE HELD LIABLE UNDER ACTUAL AUTHORITY ..........5

    C. E-HEALTH MAY BE HELD LIABLE UNDER APPARENT AUTHORITY......7

    D. E-HEALTH MAY BE HELD LIABLE FOR RATIFICATION.............................8

V. CONCLUSION......................................................................................................9

Pursuant to L-R 7-4, Plaintiff ERIC SALAIZ ("Plaintiff") respectfully submits the following Memorandum of Points and Authorities in opposition to the Motion to Dismiss filed by Defendant E-Health.

**STATEMENT OF ISSUE(S) TO BE DECIDED**

1. Whether E-Health can justify its argument that no agency relationship exists with its sales agent?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

E-Health argues it has no liability for selling products through illegal robocalling. However, the law is well established that a defendant may be liable for selling their products through illegal robocalling through agency principles even if the defendant did not personally place the violating call. Further, it would be premature to dismiss this case because E-Health does not challenge that Plaintiff states a claim for relief against John Doe, yet Plaintiff has no way of identifying John Doe without pursuing discovery from E-Health.

### II. FACTUAL BACKGROUND

Defendant E-Health sells Medicare insurance. Dkt. 1., "Complaint," ¶ 22. Defendant John Doe is an unknown business entity. *Id*. ¶ 23. To increase its sales and avoid paying for legitimate forms of advertising, E-Health hired John Doe to market their company and produce inbound calls. *Id*. ¶ 24. John Doe amassed a list of thousands of phone numbers from unknown sources and dialed Plaintiff and the putative class using an artificial or prerecorded voice message. *Id*. ¶¶ 25-27. Defendants did not possess consent from Plaintiff and the Class as required prior to deploying these prohibited calls. *Id*. ¶ 28.

On or around December 20, 2021, at 1:42 p.m., Plaintiff received a phone call with the caller ID appeared as (515) 474-6906. *Id*. ¶¶ 29-30. When Plaintiff answered, Plaintiff heard an artificial or prerecorded voice pretending to be a real person. *Id*. ¶ 31. The voice said "…this is Medicare Rewards, can you hear me OK? I'm with Medicare Rewards and, press one to be removed, I just wanted to get in touch with you today to tell you that you may be paying too much for your Medicare insurance." *Id*. ¶ 32.

Plaintiff could tell he was not talking to a real person because he asked questions that the voice did not respond as expected. *Id*. ¶ 33. Instead, the voice said: "One of our senior insurance professionals

can look over your current plan and make sure you aren't missing out on any savings." *Id*. When a live agent came on the phone, Plaintiff was solicited for Defendants' Medicare insurance services. *Id*. ¶ 34. The agent asked for "David," Erik's father's name, so Plaintiff stayed on the line to determine who could be calling. *Id*.

Plaintiff never consented to receive calls from Defendants. *Id*. ¶ 35. Plaintiff had no relationship with Defendants. In addition to causing statutory damages, these illegal call(s) caused actual damages of annoyance, intrusion, wasted battery life and time to Plaintiff. *Id*. ¶ 36.

On August 23, 2022, Plaintiff filed this suit under 47 U.S.C. § 227(b)(1)(A)(iii) and (B) of the TCPA, and the Unlawful Prong of § 17200. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or 23(b)(3) seeking to represent the following classes ("Classes"):

> Class. All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her cellular telephone; (4) that used an artificial or prerecorded voice; (5) for the purpose of selling Defendants' products or services; (6) where Defendants did not have the recipient's express written consent prior to placing the calls.

On October 17, 2022, E-Health filed a motion to dismiss, (Dkt. 15) motion to strike, (Dkt. 16) and a motion to stay discovery (Dkt. 17). Now before the Court is E-Health's motion to dismiss and Plaintiff's opposition.

### III.  LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 812 (N.D. Cal. 2020). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011)). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *In re Google Assistant*, 457 F. Supp. 3d at 812 (citing *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted).

A court's review on a 12(b)(6) motion to dismiss "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019). Moreover, in evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

### IV. E-HEALTH MAY BE DIRECTLY OR INDIRECTLY LIABLE FOR THE TCPA VIOLATIONS

E-Health does not challenge that Plaintiff states a claim against John Doe for at least one TCPA violation. Instead, E-Health argues that the Complaint does not sufficiently state that E-Health is directly or indirectly liable for third party robocalling. But as the FCC observed "a seller that did not initiate a call may be held vicariously liable for violations of the TCPA that are committed by third-party telemarketers under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd 6574 at ¶ 28 (April 17, 2013) (internal quotes omitted).

E-Health argues that Plaintiff cannot show it is liable for John Doe's TCPA violations, but Plaintiff's experience with a TCPA violation selling E-Health's products raises an inference of agency

liability and E-Health does not repudiate or disclose the identity of John Doe. Therefore, the issue of agency liability is likely for the jury and cannot be settled on a motion to dismiss.

### A.     E-HEALTH MAY BE HELD DIRECTLY LIABLE

First, E-Health argues that the Complaint does not sufficiently state it is directly liable for John Doe's TCPA violations. Dkt. 15, at p. 10. However, Plaintiff does not have knowledge of E-Health's internal sales structure at this early stage. Plaintiff only knows that he was called and solicited for E-Health's products via illegal robocall. Complaint, ¶¶ 29-36. Plaintiff believes that he was called by an entity hired by E-Health, (John Doe) but Plaintiff has no specific knowledge of the private arrangement that exists between E-Health and John Doe. For all Plaintiff knows, John Doe may be placing calls from an office in E-Health's building, but he may also work down the street, or anywhere else. The fact that the robocalling may have taken place outside the confines of Defendants' buildings is a distinction without a difference. To accomplish the sales of their products illustrated in the Complaint, E-Health had to get ready to and build systems to accept the business generated by John Doe. But Plaintiff's knowledge from outside the looking glass of Defendants' operations is limited to the fact that Defendants cooperate pursuant to a mutually beneficial sales relationship.

This is sufficient to infer an agency relationship exists. At the pleading stage, it is sufficient that Plaintiff has alleged facts supporting a plausible inference that the defendant is responsible for the illegal calls that the plaintiff allegedly received. *See Morris v. SolarCity Corp.*, Case No. 15-cv-05107-RS, 2016 U.S. Dist. LEXIS 46748, 2016 WL 1359378, *6 (N.D. Cal. Apr. 6, 2016) ("it is not [plaintiff's] burden at this juncture to come forward with allegations or evidence conclusively negating the possibility that [defendant] neither made the calls itself nor can be held indirectly liable.").

Moreso, it would be premature to dismiss this complaint because Plaintiff has no way of knowing the identity of John Doe without pursuing discovery from E-Health, and E-Health has refused to disclose any information about John Doe or the calling campaign. While meeting and conferring on E-Health's

motion to dismiss, on October 14, 2022, Plaintiff's counsel emailed requesting more information from E-Health regarding its knowledge of John Doe and the telemarketing campaign as alleged in paragraph 25, but E-Health has not yet responded, and instead filed the instant motion. *See* Declaration of Mark L. Javitch, ¶ 3. As the initial case management conference was recently extended to March 16, 2023, Plaintiff is not able to begin issuing discovery requests in the near future to secure evidence. Therefore, E-Health is not entitled to dismissal.

### B.     PLAINTIFF ALLEGES ACTUAL AUTHORITY

Next, E-Health argues that it is not vicariously liable under actual authority because the Complaint does not establish E-Health specifically authorized John Doe to violate the TCPA. Dkt. 15, at p. 13. But Plaintiff does allege that E-Health hired John Doe to violate the TCPA. Complaint, ¶ 24 ("To increase its sales and avoid paying for legitimate forms of advertising, E-Health hired John Doe…". Further, without the benefit of discovery, Plaintiff is aware that a violation occurred, but Plaintiff is not privy to the private arrangements between E-Health and John Doe. "Plaintiff's allegations, at this stage of the litigation, are sufficient for the purpose of asserting a claim of vicarious liability against the [d]efendants in connection with [plaintiff's] alleged telemarketing calls, under actual authority, i.e., 'one party consent[ing] to have another act on its behalf, with the principal controlling and directing the acts of the agent.'" *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, 2018 WL 6061405, at *18 (D.N.J. Nov. 20, 2018) (citing *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013).

E-Health's outsourcing of their robocalling to third parties does not shield themselves from TCPA liability. *See Dobkin v. Enter. Fin. Grp., Inc.*, Case No. 2:14-CV-01989 WHW, 2014 U.S. Dist. LEXIS 123317, 2014 WL 4354070, at *10-11 (D. NJ Sep. 3, 2014) (an "outsourcing arrangement in which [one defendant] had actual authority to sell [another defendant's] products through telemarketing calls" is indicative of an agency relationship). "[T]raditional principles of vicarious liability apply to actions

brought under the TCPA because any other interpretation would allow companies to evade TCPA liability simply by creative contracting." *McCabe v. Caribbean Cruise Line, Inc.*, Case No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014) (internal quotations and citations omitted).

As this Court explained in *SolarCity Corp.*, "it is not [plaintiff's] burden at this juncture to come forward with allegations or evidence conclusively negating the possibility that [defendant] neither made the calls itself nor can be held indirectly liable. 2016 U.S. Dist. LEXIS 46748, 2016 WL 1359378, at *6.He has alleged facts from which [defendant's] direct or indirect liability can be inferred." 2016 U.S. Dist. LEXIS 46748, 2016 WL 1359378, at *6; see also *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-51 (N.D. Ill. 2014) ("[I]t is defendants, not plaintiff, who can reasonably be expected to know these facts[.]"); *Dish Network*, 28 FCC Rcd 6574 at ¶ 46 (consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information); *Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116, at *10 (finding a plausible claim of vicarious liability where the plaintiff alleged that the disputed "robocall was made pursuant to a contract"); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (finding a cognizable agency relationship where Plaintiff "alleged an unlawful telemarketing scheme the end result of which was the generation of business for [the defendant,]" despite the fact that Plaintiff "has not alleged every detail of the relationship between the [d]efendants" at the pleadings stage).

Finally, although the terms of the contracts between E-Health and John Doe are not the dispositive factor in determining actual authority, it would be premature to dismiss Plaintiff's actual authority claim without first considering these contracts. *See Shuckett v. DialAmerica Mktg.*, No. 17CV2073-LAB (KSC), 2019 U.S. Dist. LEXIS 29598, 2019 WL 913174, at *9 (S.D. Cal. Feb. 22, 2019) (What outsourced tasks telemarketer is "permitted to do (or restricted from doing)…depends in large part on its authorization to do so under the parties' contract.") (citation omitted).  Plaintiff is not yet privy to the contract(s)

Defendants have between themselves. *See Lushe v. Verengo Inc.*, Case No. CV 13-07632, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *20-21 (CD. Cal. Oct. 22, 2014) (denying defendant's summary judgment motion where defendant's outsourcing of its products' telemarketing created a jury issue on the existence of an agency relationship). Therefore, issues of fact remain that preclude a finding that no actual authority exists.

### C.  E-HEALTH MAY BE HELD LIABLE UNDER APPARENT AUTHORITY

Next, E-Health argues that Plaintiff cannot demonstrated apparent authority. "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017). The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

Indicators of apparent authority are present here. The Complaint reveals how calls are placed by John Doe and then solicited for E-Health's products. It appears to an outside observer, such as Plaintiff, that Defendants are cooperating to sell a product together via telemarketing. Complaint, ¶ 29-34. It is difficult to tell where the actions of John Doe stop and E-Health start.

In another case involving a robocall with a live customer call transfer to Defendants, in finding apparent authority, the court explained, "[f]rom the perspective of Plaintiff, Defendant's statements could reasonably give the appearance that Defendant, the purported principal, authorized [John Doe], the purported agent, to initiate the Calls on its behalf." *Banks v. Pro Custom Solar*, Case No. 17-CV-613, 2018 U.S. Dist. LEXIS 128182, 2018 WL 3637960, at *2 (E.D.N.Y. July 31, 2018). Therefore, it would be premature to dismiss Plaintiff's claim that John Doe had E-Health's apparent authority. *See Smith v.*

*State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014) (sharing product and pricing information and transferring incoming calls are indicators of apparent authority).

### D.  E-HEALTH MAY BE HELD LIABLE FOR RATIFICATION

Lastly, E-Health argues that the complaint does not allege ratification because it does not state that E-Health knew the calls were illegal and accepted their benefits. However, the Complaint sufficiently alleges ratification. Under the Restatement (Third) of Agency, § 4.01 cmt. b, "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." "An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." § 94 of the Restatement (Second) of Agency.

The Complaint demonstrates that E-Health solicits and earns profit through third party sales derived from a volume of TCPA-violating calls.  (Complaint, ¶¶ 29-34).  E-Health cannot claim it does not ratify the violating calls because E-Health has not repudiated John Doe's actions or even disclosed the identity of John Doe. Indeed, E-Health has retained the benefits of John Doe's illegal sales efforts. *See* Restatement (Third) of Agency § 4.01(1) cmt. d. (A principal ratifies the action of an agent if it "knowingly accepts the benefits of the transaction."). "Covering up the misdeeds of an agent can also constitute ratification." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1247 (N.D. Cal. 2004). "Where the acts by the agent were not within the scope of the agency relationship, if they are not disavowed by the principal, failure to disavow may constitute ratification." *Id*. at 1248.

E-Health argues there are not sufficient facts to show that they "knowingly" accepted business pursuant to illegal telemarketing. But due to the nature of robocalling, it is unlikely Plaintiff's federal lawsuit represents the first complaint E-Health's has received regarding robocalling. E-Health ratified by because aware of robocalling, still accepting benefits, and taking no remedial action. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.,* Case No. 15-CV-06314-YGR, 2018 U.S. Dist. LEXIS 132078, 2018 WL 3707283, at *15 (N.D. Cal. Aug. 3, 2018) (denying Defendant's motion for summary judgment

because a "seller may be held liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits.") Accordingly, the facts here are sufficient to create a triable issue on the question of ratification. *See Lushe*, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *20-21 (whether defendants ratified the TCPA violation created a jury issue); *Shuckett*, 2019 U.S. Dist. LEXIS 29598, 2019 WL 913174, at *10 (denying defendant's motion for summary judgment because it was an issue for the jury to determine whether the course of dealing among defendants constituted ratification of unlawful calls). Therefore, the Court should deny E-Health's motion on there being no possibility of having ratified the violation.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss. If the Court does grant the motion, Plaintiff requests leave to amend.

Dated: October 31, 2022         By:    /s/ Mark L. Javitch
                                       Mark L. Javitch (SBN 323729)
                                       JAVITCH LAW OFFICE
                                       3 East 3rd Ave. Ste. 200
                                       San Mateo CA 94401
                                       Tel: (650) 781-8000
                                       Fax: (650) 648-0705

                                       *Attorney for Plaintiff*
                                       And the Putative Class

# CERTIFICATE OF SERVICE

Filed electronically on October 31, 2022 with the United States District Court for the Northern District of California CM/ECF system.

Notification was therefore automatically sent through the CM/ECF system to:

United States District Court
Northern District of California

And all counsel of record as recorded on the electronic service list.

Respectfully submitted,

By: /s/ Mark L. Javitch
      Mark L. Javitch